## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Randy O'Bryan, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Pember Companies, Inc.,<br><br>Defendant. | Court File No.: 3:20-CV-00664-JDP<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS** |

## INTRODUCTION

Defendant Pember Companies, Inc. ("Pember" or "the Company") moves this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA") and the parties' mutual agreement to arbitrate, to dismiss the class and collective claims and compel Plaintiff Randy O'Bryan ("O'Bryan") to arbitrate the claims asserted by him against Pember before the American Arbitration Association.

When O'Bryan started his employment with Pember, he entered into the Company's Dispute Resolution policy.[1] The Dispute Resolution policy contains two key elements: (1) a mutual agreement to arbitrate claims between O'Bryan and Pember; and (2) a mutual agreement that O'Bryan (or the Company) would only bring claims in their individual capacities, and not as a member of a purported class or collective.

The parties' agreement to arbitrate specifically included the claims brought by O'Bryan in his lawsuit, including claims under the federal Fair Labor Standards Act, Wisconsin state statutes, and any other claims arising under the common law.

---

[1] *See* ECF No. 12-1 at 18-19; *see also* Decl. of Brent Pember, Ex. A at pp. 17-18.

Pember asked O'Bryan to dismiss this lawsuit and arbitrate his claims pursuant to the Dispute Resolution policy, but he has declined, stating the Dispute Resolution policy is not enforceable.

Arbitration is favored under the law, and this agreement to arbitrate is no different. The class and collective claims should be dismissed. The Court should compel O'Bryan to arbitrate the claims in his lawsuit on an individual basis, as agreed in the Dispute Resolution policy.

## FACTUAL BACKGROUND

### A.     The Parties

Pember is a Menomonie, Wisconsin based company that specializes in construction, concrete and excavating work. (Declaration of Brent Pember, ¶ 4, Ex. A at p. 5.) The Company was started by Larry Pember in 1975, and is now run by his three sons, Joe, Eric, and Brent. (*Id*.) Pember's work includes excavating, grading, and street construction throughout Wisconsin and eastern Minnesota. (*Id*.).

O'Bryan accepted employment with Pember in March 2018 as a general laborer. (Answer ¶ 25.) When he started, he was provided with Pember's Field Handbook and signed an acknowledgement that he had read and understood the Field Handbook. (B. Pember Decl. ¶ 5, Ex. B.) O'Bryan's employment with the Company ended in June 2020. (Answer ¶¶ 14, 18.)

### B.     The Dispute Resolution Policy

Pember includes a Dispute Resolution policy in its Field Handbook. (B. Pember Decl. ¶ 4.) The Dispute Resolution policy implements a mutual agreement between

Pember and its employees to arbitrate claims on an individual basis. (*Id*. ¶¶ 2, 3.) The agreement to arbitrate is intended to save Pember and its employees time and money when resolving claims against one another by opting for individual arbitrations versus litigating cases in court. (*Id*. ¶ 2.)

When an employee was onboarded, he or she is given a copy of the Field Handbook. (*Id*.) Pember gave O'Bryan a copy of the Field Handbook when he was onboarded. (*Id*. ¶ 4.) Bridget Marshall sat down with O'Bryan to go through the Field Handbook with him. (Bridget Marshall Declaration ¶ 2.) After Marshall went through the entire Field Handbook with O'Bryan including the Dispute Resolution policy, she asked if he had any questions; O'Bryan did not have any questions. (*Id*.). Marshall's understanding was that O'Bryan understood the Field Handbook, including the Dispute Resolution policy. (*Id*.)

Employees, like O'Bryan, sign an acknowledgment that they received and understood the Field Handbook. (B. Pember. Decl. ¶ 5, Ex. B.) The Field Handbook acknowledgment form contains standard language that preserves the at-will nature of employees' relationships with Pember. (*Id*. ¶ 5.) In other words, like many employers, Pember did not want the Field Handbook to unintentionally create a contract for employment; it wanted its employees to remain "at-will." (*Id*.)

While the Field Handbook and acknowledgement form preserved the at-will nature of O'Bryan's employment, the Dispute Resolution policy established a mutual, binding agreement to individual arbitration. (*Id*. ¶ 6.) The Dispute Resolution policy was mutual, meaning that both an employee and the Company gave up their right to file

employment-related claims in court and agreed that any claims would be filed individually, and not as part of a class or collective. (*Id*. ¶ 2.) The end of the Dispute Resolution policy has a separate acknowledgment (apart from the acknowledgment of receipt of the Field Handbook) that summarizes the parties' mutual promises to arbitrate. (*Id*., Ex. A at 17.)

### 1.      The Agreement to Arbitrate

The Dispute Resolution policy contains an agreement between O'Bryan and the Company that any "problems, claims and disputes" between them will be resolved through binding arbitration before the American Arbitration Association:

> I agree that all problems, claims and disputes experienced between me or Pember Companies, Inc related to my employment shall be resolved as outlined below. I agree to submit all such disputes to final and binding arbitration. Arbitration shall be the sole and exclusive forum and remedy for all covered disputes of either Pember Companies, Inc. or me.

(B. Pember Decl., Ex. A at p. 17.)

The scope of the "problems, claims or disputes" that must be arbitrated are those related to O'Bryan's employment and include the following items: statutory claims, such as those under the federal Fair Labor Standards Act ("FLSA"), as well as "all other federal, state and local laws addressing the employment relationship; and any non-statutory employment-related claims arising under federal or state common law including contractual claims." (*Id*.)

In the arbitration agreement, Pember also agreed to bear the bulk of the arbitration-related fees. (*Id*. at pp. 17-18.) First, O'Bryan and Pember agree to split the initial arbitration filing fee, except that O'Bryan's share of the filing fee is limited to the

filing fee for a civil complaint in federal court. (*Id*. at p. 18.) Second, other than the initial

filing fee, Pember agreed to pay all other arbitration costs and fees incurred by either

O'Bryan or Pember, provide none of the claims are determined to be frivolous. (*Id*.)

Third, Pember agreed that it would "not pursue costs, arbitration fees, or its attorney's

fees," if Pember prevailed on any "non-frivolous claims" brought by O'Bryan. (*Id*.)

### 2.    The Agreement to Bring Only Individual Claims

Both Pember and O'Bryan also agreed on a class/collective action waiver. They

mutually agreed that any claims they may bring against each other would only be brought

in an individual capacity, not as a class or collective:

> Additionally, both Pember Companies, Inc, and I agree that all claims may
> only be brought in my or Pember Companies, Inc.'s individual capacity and
> not as a plaintiff or class member in any purported class, collective, or
> representative proceeding.

(*Id*.)

### 3.    The Dispute Resolution Confirmation

The Dispute Resolution policy also contained a final confirmatory paragraph that

summarized the parties' mutual agreements to bring claims against one another only as

part of an individual arbitration and not as part of a class or collective action in court:

> This provision contains a binding arbitration provision which may be
> enforced by both Pember Companies, Inc. and me. The parties also agree that
> both I and Pember Companies, Inc. are each waiving the right to a trial by
> jury or to participate in a class or collective action or a class arbitration and
> that Pember Companies, Inc. and I each may bring claims against the other
> only in my or its individual capacity and not as a class member or class
> representative in any purported class, collective or representative proceeding.
> I have read this entire provision and fully understand the limitations which it

imposes upon me and I understand that this provision cannot be modified except by the President of Pember Companies, Inc.

(*Id*.)

## C.    O'Bryan's Federal Lawsuit

O'Bryan filed this lawsuit on July 20, 2020 as a purported class and collective action for violation of the FLSA and Wisconsin's Wage Payment and Collection Laws related to the payment of overtime. (Compl. ¶ 1.) The lawsuit claims that, between July 20, 2017 and July 20, 2020, Pember did not pay its non-exempt employees for time they spent traveling (1) in the mornings, from the Company's shop to the job site, and (2) at the end of the day, from the job site back to the Company's shop. (*Id*. ¶¶ 36-42.) And that, between July 20, 2017 and July 20, 2020, Pember did not include in its regular rate of pay all non-discretionary forms of pay when calculating its non-exempt employees' overtime rates. (*Id*. ¶¶ 43-47.)

O'Bryan brought five claims for relief arising out of his employment relationship with Pember. The first two claims allege violations of the FLSA. Claim One alleges that the Company did not pay O'Bryan (and other non-exempt workers) overtime for their travel time in violation of the FLSA. (*Id*. ¶¶ 73-85.) Claim Two alleges that the Company did not compute overtime rates of pay for O'Bryan (and other non-exempt workers) in accord with the FLSA because Pember did not include non-discretionary compensation in its calculations. (*Id*. ¶¶ 86-97.)

The other three claims allege violations of Wisconsin state law. Claim Three alleges that the Company did not pay O'Bryan (and other non-exempt workers) overtime

for their travel time in violation of Wisconsin statutes. (*Id*. ¶¶ 98-106.) Claim Four alleges that the Company did not compute overtime rates of pay for O'Bryan (and other non-exempt workers) in accord with Wisconsin statutes because Pember did not include non-discretionary compensation in its calculations. (*Id*. ¶¶ 107-115.) Finally Claim Five alleges that Pember violated Wisconsin statutes for failing to pay O'Bryan (and other non-exempt workers) their agreed upon wage. (*Id*. ¶¶ 116-127.)

O'Bryan has proposed two FLSA collectives and two Rule 23 classes for the state law claims. The FLSA collectives are alleged as follows:

**FLSA Collective (Travel Time)**: All hourly-paid, non-exempt employees employed by Defendant within three (3) years immediately prior to the filing of this Complaint (ECF No. 1) who have not been compensated for all hours worked in excess of forty (40) hours in a workweek as a result of Defendant's failure to compensate said employees for compensable travel time during the work day.

**FLSA Collective (Non-Discretionary Compensation)**: All hourly-paid, non-exempt employees employed by Defendant within three (3) years immediately prior to the filing of this Complaint (ECF No. 1) who have not been compensated for all hours worked in excess of forty (40) hours in a workweek at the proper, correct, and/or lawful overtime rate of pay as a result of Defendant's failure to include all forms of non-discretionary compensation in said employees' regular rates of pay for overtime calculation purposes.

(*Id*. ¶ 54.) And the Rule 23 classes are alleged as follows:

**Wisconsin Class (Travel Time)**: All hourly-paid, non-exempt employees employed by Defendant within two (2) years immediately prior to the filing of this Complaint (ECF No. 1) who have not been compensated for all hours worked in excess of forty (40) hours in a workweek as a result of Defendant's failure to compensate said employees for compensable travel time during the work day.

**Wisconsin Class (Non-Discretionary Compensation)**: All hourly-paid, non-exempt employees employed by Defendant within two (2) years immediately prior to the filing of this Complaint (ECF No. 1) who have not been compensated for all hours worked in excess of forty (40) hours in a workweek at the proper, correct, and/or lawful overtime rate of pay as a result of Defendant's failure to include all forms of non-discretionary compensation in said employees' regular rates of pay for overtime calculation purposes.

(*Id*. ¶ 63.)

### D.    Defendant's Answer and Affirmative Defenses

On September 23, 2020, Pember answered O'Bryan's complaint and denied that it had a policy in place to deny employees overtime pay for travel time and denied that it determined O'Bryan's overtime pay incorrectly. (*See generally* Answer.) As such, the Company also denied that it violated the FLSA or Wisconsin law. (*Id*.)

In addition, Pember asserted an affirmative defense that O'Bryan's claims must be arbitrated before the AAA because of the Dispute Resolution policy. (ECF No. 12 at 11-13 (Affirmative Defense ¶ 2).) And requested that the Court issue an order for O'Bryan to arbitrate his individual claims with Pember. (*Id*. at 17 ("Wherefore" clause ¶ 2).)

### E.    O'Bryan Declined to Arbitrate

Pember asked O'Bryan to arbitrate his claims after he filed this lawsuit. (Declaration of Daniel J. Supalla Decl. ¶ 2.) After reviewing the Dispute Resolution policy and O'Bryan's acknowledgment of the Field Handbook, O'Bryan declined to arbitrate because the Dispute Resolution policy was not enforceable. (*Id*. ¶ 2.)

8

## ARGUMENT

### I.   LEGAL STANDARD

The Federal Arbitration Act, 9 U.S.C. §§ 1-16, was enacted almost one-hundred years ago "to reverse the longstanding judicial hostility to arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA codifies a strong federal policy in favor of enforcing arbitration agreements, including agreements to arbitrate statutory claims. *See* 9 U.S.C. § 2; *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) ("Congress directed courts to abandon their hostility [toward arbitration] and instead treat arbitration agreements as 'valid, irrevocable, and enforceable'"); *Gilmer*, 500 U.S. at 25 (FAA provisions demonstrate federal policy that favors arbitration).

Under the FAA, "… an agreement in writing to submit to arbitration an existing controversy arising out of such a contract [or] transaction shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Arbitration agreements [are] enforceable to the same extent as other contracts, so courts must enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Zurich Am. Ins. Co. v. Watts Indus., Inc*., 466 F.3d 577, 580 (7th Cir. 2006) (quoting *Volt Info. Scis., Inc. v. Stanford Univ*., 489 U.S. 468, 478 (1989)).

Arbitration allows parties to resolve their claims for "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 130 S. Ct. 1758, 1775 (2010).

Thus, "by agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute, it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer*, 500 U.S. at 26 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

The FAA governs all arbitration agreements "evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court has interpreted this language broadly. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995) ("examining the statute's language, background, and structure, we conclude that the word 'involving' is broad and is indeed the functional equivalent of 'affecting'"). Thus, any transaction affecting commerce, such as an agreement governing disputes over an employment relationship, is governed by the FAA. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63-64 (1995).

Upon a showing of an agreement to arbitrate, "any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Gore v. Alltel Commc'ns, LLC,* 666 F.3d 1027, 1032 (7th Cir. 2012). "[T]he FAA sweeps broadly, 'requir[ing] courts rigorously to enforce arbitration agreements according to their terms.'" *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 800 (7th Cir. 2020) (quoting *Epic Sys. Corp.*, 138 S. Ct. at 1621)).

## II.     THE COURT SHOULD COMPEL O'BRYAN TO ARBITRATE

A party seeking to compel arbitration must show three things: (1) a written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3)

a refusal by the opposing party to arbitrate. *Zurich*, 417 F.3d at 690. Where these conditions are satisfied, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original); *see also* 9 U.S.C. § 4 ("upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement"). "A court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).

### 1. The Dispute Resolution Policy is a Written Agreement to Arbitrate.

Whether there is a valid agreement to arbitrate is a matter of state contract law. *Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 857 (7th Cir. 2015). Under Wisconsin law, a valid contract must contain an offer, acceptance, and consideration. *Carroll v. Stryker Corp.*, 670 F. Supp. 2d 891, 898 (W.D. Wis. 2009) (Crocker, M.J.), *aff'd*, 658 F.3d 675 (7th Cir. 2011) (and citing cases). The Dispute Resolution policy meets the criteria for contract formation under Wisconsin law, and therefore also meets the criteria under the FAA for a written agreement to arbitrate.

First, Pember made the offer to O'Bryan by providing him with the Dispute Resolution policy at the commencement of his employment with the Company. (B. Pember Decl. ¶ 4.) O'Bryan cannot reasonably dispute that the offer was made, given Marshall's attestation that she went over the Dispute Resolution policy with him. (B. Marshall Decl. ¶ 2.) Indeed, the Dispute Resolution policy contains an acknowledgement that O'Bryan "read" and "fully [understood]" the Dispute Resolution policy. (B. Pember Decl, Ex. A at p. 18.) What is more, O'Bryan acknowledged having received the Dispute Resolution policy. (*Id.*, Ex. B.)

Second, O'Bryan accepted the Dispute Resolution policy through his conduct: by accepting a job with Pember as a general laborer. *Carroll*, 670 F. Supp. 2d at 898-99 (acceptance may be communicated in writing, orally, or through conduct); *see also Ott v. Boring*, 131 Wis. 472, 476-77, 110 N.W. 824, 828-29 (1907).

Third, Dispute Resolution policy is also supported by consideration. Mutual promises that impose some legal liability on the parties making those promises is consideration under Wisconsin law. *Carroll*, 670 F. Supp. 2d at 899; *see also First Wisconsin Nat. Bank of Milwaukee v. Oby,* 52 Wis. 2d 1, 7, 188 N.W.2d 454, 457 (1971) ("However, in order for mutual promises to furnish consideration for each other and thus create a binding contract, they must impose some legal liability on the persons making them.") O'Bryan and Pember furnished consideration by mutually agreeing that any claims arising out of O'Bryan's employment with Pember would be arbitrated on an individualized basis. (B. Pember Decl., Ex. A. at p. 17.) The concluding paragraph of the

Dispute Resolution policy summarized the parties' mutual promises to individual arbitration:

> This provision contains a binding arbitration provision which may be enforced by <u>both Pember Companies, Inc. and me</u>. The parties both agree that <u>both I and Pember Companies, Inc</u>. are each waiving the right to a trial by jury or to participate in a class or collective action or a class arbitration and that <u>Pember Companies, Inc and I each</u> may bring claims against the other only in my or its individual capacity …

(*Id*. at p. 18 (underlining added).) *Carroll*, 670 F. Supp. 2d at 899; *see also Tinder v. Pinkerton Sec*., 305 F.3d 728, 734 (7th Cir. 2002) ("An employer's promise to arbitrate in exchange for an employee's promise to do the same constitutes sufficient consideration to support the arbitration agreement."); *Tupper v. Bally Total Fitness Holding Corp.*, 186 F. Supp. 2d 981, 988 (E.D. Wis. 2002) (enforcing employer-employee dispute resolution policy based on exchange of promises to arbitrate and compelling arbitration).

### 2. The Dispute Resolution Policy is Enforceable, Despite the Field Handbook's Preservation of the At-Will Employment Relationship

Pember expects O'Bryan to argue that the language in the Employee Acknowledgement Form rendered the Dispute Resolution policy unenforceable. (*See* Supalla Decl. ¶ 2.) Pember assumes this argument will be premised on the principle set out in cases like *Bantz v. Montgomery Estates, Inc*., 473 N.W.2d 506, 508 (Wis. App. 1991), where courts have ruled that language in employee handbooks preserving the at-will employment relationship do not create employment contracts. But those cases have no application to the Dispute Resolution policy.

In this case, the reasonable, correct interpretation of the Field Handbook (and the Dispute Resolution policy) preserves the at-will nature of O'Bryan's employment *and* implements the parties' mutual promises to individually arbitrate claims. Indeed, this Court held in *Carroll v. Stryker Corp.*, simply because the employer preserves the at-will nature of the parties' relationship using language in an employee handbook, does not render other employer-employee contracts unenforceable. 670 F. Supp. 2d 891, 899 (W.D. Wis. 2009), *aff'd*, 658 F.3d 675 (7th Cir. 2011).

Using contract interpretation principles to understand the Field Handbook, the Dispute Resolution policy, and the acknowledgment form illustrates how Pember and O'Bryan preserved O'Bryan's at-will employment and agreed to arbitration. The Court's goal when interpreting contracts is to "discern the intentions of the parties as expressed in the language of the contract." *Tufail v. Midwest Hosp., LLC*, 833 N.W.2d 586, 600 (Wis. 2013). Contracts are also to be interpreted in a "in the manner that it would be understood by persons in the business to which the contract relates." *Id*. (quotations omitted). Any interpretation of a contract should give full effect to each contract provision. *MS Real Estate Holdings, LLC v. Donald P. Fox Family Tr*., 864 N.W.2d 83, 97 (Wis. 2015).

First, as to the preservation of the at-will relationship between Pember and O'Bryan, the language contained in the acknowledgment form expresses the parties' intent clearly and unambiguously: O'Bryan would be an at-will employee. (B. Pember Decl, Ex. B.) Use of similar language in acknowledgement forms is commonplace. In fact, Wisconsin courts have held that an employer may preserve an at-will employment relationship – and its right to terminate an employee if he or she engages in some

14

egregious misconduct – without following a progressive discipline policy in an employee handbook without getting sued for breach of an employment contract based on the progressive discipline policy. *See Helland v. Kurtis A. Froedtert Mem'l Lutheran Hosp*., 601 N.W.2d 318, 323-24 (Wis. App. 1999) (deviation from guidelines in employee handbook was not wrongful discharge because handbook did not alter at-will employment relationship); *Olson v. 3M Co*., 523 N.W.2d 578, 589 (Wis. App. 1994); *Bantz*, 473 N.W.2d at 508; *Ferraro v. Koelsch*, 368 N.W.2d 666, 672 (Wis. 1985) (in light of Wisconsin's preference for at-will employment, specific language must exist to bring an employer-employee relationship outside of the at-will realm). The language in the acknowledgment form in this case should be interpreted to achieve that purpose: preservation of the at-will employment relationship between Pember and O'Bryan.

The Court may also give full effect to the Dispute Resolution policy, notwithstanding the acknowledgment form's language preserving O'Bryan's at-will employment. In fact, the Dispute Resolution policy has no relationship to O'Bryan's status as an at-will employee at all: O'Bryan could be an at-will employee *or* have an employment contract *and also* be subject to the Dispute Resolution policy. In other words, an employer's concerns in cases like *Helland*, *Olson*, and *Bantz* – the alteration of the at-will employment relationship – are not impacted by a Dispute Resolution policy like the one in this case. Arbitration agreements and class waivers – like those in the Dispute Resolution policy – serve entirely different purposes than clauses in employee handbooks regarding at-will employment. In other words, the language preserving the at-will employment relationship in O'Bryan's acknowledgement form should not be co-

15

opted to abrogate the Dispute Resolution policy. The Court should not permit O'Bryan to conflate the two in order to avoid his promise to individually arbitrate his claims. The Field Handbook should be understood to give full effect to all its contents, and that includes enforcing the Dispute Resolution policy as agreed.

### 3. O'Bryan's Employment Claims Fall within the Scope of the Dispute Resolution Policy.

The Dispute Resolution policy covers all claims that O'Bryan filed in this lawsuit. It requires arbitration of all claims arising out of O'Bryan's employment, specifically calls out the FLSA, and includes other state statutory claims. (B. Pember Decl., Ex. A at p. 17.) Consistent with the liberal policy of the FAA, the scope of the Dispute Resolution policy should be construed broadly. *See Moses H. Cone Memorial Hosp.,* 460 U.S. at 24-25 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). With respect to the Dispute Resolution policy, the Court should apply a "presumption of arbitrability." *AT&T Techs., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 650 (1986).

The Dispute Resolution policy requires individual arbitration of all "[p]roblems, claims or disputes" including "the Fair Labor Standards Act; … all other … state … laws addressing the employment relationship …." (B. Pember Decl., Ex. A at p. 17.) O'Bryan's first two claims are for violation of the FLSA and are therefore covered under the policy. O'Bryan's other three claims, for violation of Wisconsin state law, are state laws addressing the employment relationship. For each purported violation of Wisconsin law, O'Bryan alleges an employment relationship. (Compl. ¶¶ 99-101 (alleging an

16

employer-employee relationship for Claim Three); ¶¶ (108-110) (same for Claim Four);
¶¶ 117-119 (same for Claim Five)).

Accordingly, there can be no reasonable dispute that all five of O'Bryan's claims
are covered by the Dispute Resolution policy. *See*, *e.g.*, *Gilmer v. Interstate/Johnson
Lane Corp.*, 500 U.S. 20, 35 (1991) (holding statutory employment discrimination claim
must be arbitrated); *Schultz v. Epic Sys. Corp.*, 376 F. Supp. 3d 927, 939 (W.D. Wis.
2019) (granting motion to compel individual arbitration of FLSA and Wisconsin wage
and hour claims and finding arbitration agreement not procedurally or substantively
unconscionable); *Moorman v. Charter Commc'ns, Inc.*, No. 18-CV-820-WMC, 2019 WL
1930116, at *7 (W.D. Wis. May 1, 2019) (granting motion to compel individual
arbitration of claims under FLSA and Wisconsin wage payment laws based upon opt-out
only arbitration agreement); *Hobon v. Pizza Hut of S. Wis., Inc.*, No. 17-CV-947-SLC,
2018 WL 4781147, at *3 (W.D. Wis. Oct. 3, 2018) (granting motion to compel individual
arbitration of claims under FLSA and Wisconsin and Illinois wage and hour laws and
finding no waiver of the right to assert arbitration occurred).

### 4.    O'Bryan's Declined to Arbitrate

After filing the lawsuit and receiving a request to arbitrate his claims on an
individual basis, O'Bryan declined. (D. Supalla Decl. ¶ 2.)

In sum, Pember has shown that the Dispute Resolution policy contains a valid and
enforceable agreement to arbitrate, that all of O'Bryan's claims fall within the scope of
the Dispute Resolution policy, and that O'Bryan has declined to arbitrate. The Court

should, therefore, grant Pember's motion to compel O'Bryan to arbitrate his claims on an individual basis before the AAA.

## III.   THE COURT SHOULD DISMISS ALL COURT PROCEEDINGS, RATHER THAN STAY PENDING ARBITRATION

Sections 3 and 4 of the FAA authorize the Court to stay proceedings and compel arbitration when an issue before the Court is subject to an arbitration agreement. *See* 9 U.S.C. §§ 3, 4. The Court, however, may dismiss a case in its entirety if all issues before it are subject to arbitration. *See Anderson v. Select Portfolio Servicing, Inc*., No. 18-CV-706-JDP, 2019 WL 1487584, at *1 (W.D. Wis. Apr. 4, 2019) (ordering arbitration and dismissal without prejudice because all claims were subject to arbitration); *Employers Ins. of Wausau v. Cont'l Cas. Co*., No. 15-CV-226-WMC, 2016 WL 632642, at *3 (W.D. Wis. Feb. 17, 2016) ("Because all of the current claims here are subject to arbitration, there is nothing for this court to decide and the case will be dismissed, without prejudice to either party filing a new lawsuit to seek confirmation of or challenge the arbitrators' decision."). As discussed, all of O'Bryan's five claims are specifically covered by the Dispute Resolution policy and thus subject to individual arbitration. Thus, this Court should dismiss O'Bryan's complaint and order arbitration.

## <u>CONCLUSION</u>

The Dispute Resolution policy is plain: "Arbitration shall be the sole and exclusive forum and remedy for all covered disputes of either Pember Companies, Inc. or me." (B. Pember Decl., Ex. A at p. 17.) All of O'Bryan's claims fall within the scope of the Dispute Resolution policy, therefore all of O'Bryan's claims should be arbitrated.

O'Bryan's refusal to arbitrate is not justified. The Court should grant Pember's motion to compel O'Bryan to individually arbitrate his employment claims.

Dated:  December 15, 2020

**NILAN JOHNSON LEWIS PA**

By:   */s/ Daniel J. Supalla*
     David A. Schooler (MN #0225782)
     Daniel J. Supalla (MN #0387064)
250 Marquette Avenue South, Suite 800
Minneapolis, MN 55401
Telephone:   (612) 305-7500
Fax:            (612) 305-7501
Email:   dschooler@nilanjohnson.com
       dsupalla@nilanjohnson.com

**ATTORNEYS FOR DEFENDANT
PEMBER COMPANIES, INC.**