IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RANDY O'BRYAN, on behalf of
himself and all others similarly situated,

       Plaintiff,       OPINION and ORDER

 v.

PEMBER COMPANIES, INC.,       20-cv-664-jdp

       Defendant.

---

  This is a proposed class and collective action for unpaid wages under the Fair Labor Standards Act and Wisconsin wage laws. Plaintiff Randy O'Bryan contends that his former employer, defendant Pember Companies, Inc., violated his and other employees' rights by failing to pay for travel time and failing to include nondiscretionary payments in the regular rate of pay for the purpose of calculating the overtime rate. Dkt. 1.

  Pember moves to compel O'Bryan to arbitrate his claims under the dispute-resolution policy contained in Pember's employee handbook. Dkt. 16. But the written acknowledgment signed by O'Bryan disclaimed any intent that the handbook would create a binding contract. The court will deny Pember's motion. But Pember's motion was not frivolous, so the court will deny O'Bryan's request for sanctions.

BACKGROUND

  A motion to compel arbitration is reviewed in the same way as a motion for summary judgment. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The court considers all evidence in the record and draws all reasonable inferences in the light most favorable to O'Bryan because he is the non-moving party. *Id.*

Pember is a construction company based in Menomonie, Wisconsin. It hired O'Bryan to work as a laborer in March 2018. Pember submits a declaration from Bridget Marshall, Pember's payroll and human resources specialist, who says that when O'Bryan was hired, she "walked him through" Pember's 48-page employee handbook. Dkt. 19, ¶ 2.

The handbook includes a dispute-resolution policy that states,

> I agree that all problems, claims and disputes experienced by me or Pember Companies, Inc. related to my employment shall be resolved as outlined below. I agree to submit all such disputes to final and binding arbitration. Arbitration shall be the sole and exclusive forum and remedy for all covered disputes of either Pember Companies, Inc. or me.

Dkt. 12-2, at 18. The policy further provides that employees may bring only individual claims and cannot participate in any class or collective proceedings. *Id.* at 19. The policy states that its arbitration provision is "binding," and it concludes by stating, "I have read this entire provision and fully understand the limitations which it imposes upon me and I understand that this provision cannot be modified except by the President of Pember Companies, Inc." *Id.*

The last page of the handbook is a form by which the employee acknowledges receiving the employee handbook. *Id*. at 50. O'Bryan signed the acknowledgment form. Dkt. 12-2. The acknowledgement form includes bolded text that states:

> Unless I have an individual written employment contract, my employment relationship with Pember Companies, Inc. is at will. I may terminate my employment at any time I believe such action to be appropriate and Pember Companies, Inc. retains the same right to terminate my employment when it believes such action to be appropriate.
>
> I acknowledge that this handbook is neither a contract of employment nor a legal document.

Dkt. 12-2, at 2.

ANALYSIS

Pember contends that the handbook's dispute-resolution section requires O'Bryan to arbitrate his claims on an individual basis. To prevail on its motion, Pember must show three things: (1) the parties had a written arbitration agreement; (2) O'Bryan's claims fall within the agreement's scope; and (3) O'Bryan has refused to arbitrate his claims. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 690 (7th Cir. 2005).

O'Bryan agrees that the second and third requirements are met here. But he contends that the parties didn't have a valid agreement to arbitrate because of the acknowledgement form's disclaimer. Whether O'Bryan and Pember had a valid arbitration agreement is governed by principles of state contract law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The parties assume that Wisconsin law applies to this question, so the court will do the same. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002) ("[T]here's no discussion of choice of law issues, and so we apply the law of the forum state.").

The central question is which statement should control: the handbook's statement that the arbitration provision is "binding," or the acknowledgement form's disclaimer that the handbook is "neither a contract of employment nor a legal document." Pember's basic argument is that the dispute-resolution policy is an enforceable contract: Pember made an offer by providing O'Bryan with a copy of the policy when he began work; O'Bryan accepted the offer by accepting the job; and mutual consideration is present because both sides agreed to arbitrate their claims. *See* Dkt. 17, at 11–12.

But the problem with Pember's position is that *after* Marshall walked O'Bryan through the handbook, O'Bryan signed the acknowledgment form containing the disclaimer. Pember contends that the disclaimer merely "preserv[ed] the at-will employment relationship" between

3

the parties and "should not be co-opted to abrogate the Dispute Resolution policy." Dkt. 17, at 15–16. If the disclaimer had merely stated that the handbook was not an *employment* contract, this argument would have more force. But the disclaimer did more: it disclaimed that the handbook was a "legal document" at all. This phrase is not limited to the question of at-will employment; it speaks generally about the handbook. The plain reading of this phrase is that the handbook created no enforceable rights for either Pember or its employees. And that reading is consistent with the general approach of the handbook, which reserved to Pember the right to change its policies whenever it saw fit. Pember could easily have had its employees enter binding arbitration agreements, if that were its intent, but the broad concluding disclaimer renders the handbook a mere advisal of Pember's current policies.

The Wisconsin Court of Appeals held that a similar disclaimer stating that an employee handbook "is not intended to create, nor does it create, contract rights" prevented an employee from bringing a suit for breach of the handbook's provisions because the disclaimer expressly "refute[d] any assertion that a contractual relationship existed." *Helland v. Kurtis A. Froedtert Mem'l Lutheran Hosp.*, 229 Wis. 2d 751, 601 N.W.2d 318, 323 (Ct. App. 1999). Likewise, the Court of Appeals for the Seventh Circuit held that a disclaimer stating that an employee handbook "is not a contract of employment and does not affect your rights as an employee" barred an employee's contract claim based on the handbook because "[s]uch a disclaimer . . . is a complete defense to a suit for breach of contract based on an employee handbook."[1] *Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000).

---

[1] Although the court of appeals applied Indiana law in *Workman*, its discussion on this point was not specific to the law of that state. Rather, the court applied general contract principles drawn from cases applying Illinois, Iowa, North Dakota, and Texas law. *See Workman*, 234 F.3d at 1000.

Pember argues that *Helland* and *Workman* aren't on point because they address whether such disclaimers prevent an employee from bringing a suit for breach of an employee handbook, not whether the employer may enforce the handbook's arbitration provision. But Pember doesn't explain why this distinction matters. The question here is whether Pember's handbook created enforceable contractual obligations, and these cases speak precisely to that question. They show that when a disclaimer clearly states that an employee handbook is not a contract, an employee can't bring a contract suit to enforce the handbook's provisions. And if O'Bryan can't sue to enforce the handbook's provisions, neither can Pember. "[I]n the law, what is sauce for the goose is normally sauce for the gander." *Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412, 1418 (2016).

*Bradley v. Wolf Retail Solutions I, Inc.* is instructive. That case also involved an arbitration provision contained in an employee handbook with a disclaimer that the handbook was "not a contract" and was not "intended to create contractual obligations of any kind." 443 F. Supp. 3d 959, 960–61 (N.D. Ill. 2019). Citing *Workman* and similar cases, the court said that it was "axiomatic that a document stating that it is not a contract and that it creates no contractual obligations of any kind is not a contract that creates a contractual obligation to engage in arbitration." *Id.* at 962. The court held that the plaintiff wasn't bound by the handbook's arbitration provision. Pember attempts to distinguish *Bradley* by noting that the arbitration provision in that case bound only the employee, whereas Pember's policy requires both sides to arbitrate their claims. But the *Bradley* court wasn't concerned with the question of mutual consideration; it focused entirely on the disclaimer language in reaching its holding.

Pember cites a handful of cases in which district courts have enforced employee handbook arbitration provisions despite disclaimers like the one here. All but one are readily

5

distinguishable because they involved employees who signed forms expressly agreeing to arbitration. *See Moreno v. Progistics Distrib., Inc.*, No. 18 C 1833, 2018 WL 3659348, at *1 (N.D. Ill. Aug. 2, 2018); *Diggs v. Linebarger, Goggan Blair & Sampson, LLP*, No. 13 C 624, 2013 WL 5737306, at *1 (N.D. Ill. Oct. 22, 2013); *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 567 (S.D.N.Y. 2013). But the acknowledgement form that O'Bryan signed said nothing about arbitration.

Pember's strongest case is *Patterson v. Raymours Furniture Co., Inc.*, 96 F. Supp. 3d 71 (S.D.N.Y. 2015). In that case, the court compelled arbitration based on an employee handbook's arbitration provision despite a disclaimer that the handbook's contents were "not promissory or contractual in nature." *Id.* at 74. The court held that the handbook's arbitration provision was enforceable because it met two requirements: (1) its language was "distinct and mandatory"; and (2) the employee was expressly advised that the arbitration policy "is an essential element of your continued employment relationship with [the employer] and is a condition of your employment." *Id.* at 77–78 (citing *Isaacs*, 968 F. Supp. 2d at 571) (internal quotation marks omitted). The court agrees that the language of Pember's arbitration provision is distinct and mandatory. But Pember identifies no language in the acknowledgement form or the handbook expressly stating that compliance with the arbitration provision was a condition of O'Bryan's continued employment, and the court finds no such language, either. And even if *Patterson* were on point, the court would decline to follow it against the weight of contrary authority from Wisconsin and this circuit.

Two matters remain. First, O'Bryan asks the court in his response brief to sanction Pember under Federal Rule of Civil Procedure 11 for bringing a frivolous motion. Dkt. 21, at 2. O'Bryan failed to comply with Rule 11(c) before asking for sanctions: he gave Pember only

6

one day's notice before moving for sanctions, not the required 21 days; he did not make a separate motion for sanctions; and he did not describe the specific conduct that he believed warranted sanctions, merely stating that Pember's arguments were "without merit" and referring Pember to his response brief. *See* Dkt. 22-1. And even if O'Bryan had complied with Rule 11(c), Pember's motion had arguable merit and does not warrant sanctions.

Second, the court struck the scheduling order in January in response to the parties' stipulated request to do so. Dkt. 28. Magistrate Judge Stephen Crocker will hold a scheduling conference to reset the schedule.

ORDER

IT IS ORDERED that:

1. Defendant Pember Companies, Inc.'s motion to compel arbitration, Dkt. 16, is DENIED.

2. Plaintiff Randy O'Bryan's request for sanctions, Dkt. 21, is DENIED.

3. The clerk of court is directed to set a scheduling conference with Magistrate Judge Stephen Crocker to reset the remainder of the schedule.

Entered May 10, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge